Copies mailed
Chambers of Judge Davison

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 4|15|22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jashaad Gulifield,

                              Petitioner,                          **18 Civ. 2411 (CS)(PED)**

        - *against* -                                              **REPORT AND
                                                                   RECOMMENDATION**

Superintendent, Green Haven Correctional Facility        No objections to this Report and Recommendation (the
                                                         "R&R") have been received, so I review it for clear error.
                              Respondent.[1]             Finding none, I adopt the R&R as the decision of the
                                                         court. The Petition is dismissed. No certificate of
                                                         appealability will issue because reasonable jurists would
**TO THE HONORABLE CATHY SEIBEL,**                       not find it debatable the Petitioner has failed to
**UNITED STATES DISTRICT JUDGE**                         demonstrate by a substantial showing that he was denied a
                                                         constitutional right. The Clerk shall send a copy of this
                                                         endorsement to Plaintiff at the address on the docket and
                                                         at the address to which the R&R was sent by Judge
                        **I.  INTRODUCTION**             Davison.

        Jashaad Gulifield ("Petitioner"), proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence u    SO ORDERED.

agreement in New York Supreme Court, Rockland County. [Dkt. 1.]  On April 2      *Cathy Seibel*

Petitioner entered into a guilty plea for one count of welfare fraud in the third de    CATHY SEIBEL, U.S.D.J.

count of criminal sexual act in the third degree.  He was sentenced to an aggregate term of three    5/11/22

to six years of imprisonment.  Petitioner is currently serving his sentence at the Green Haven

Correctional Facility in Dutchess County, New York.  The Petition comes before me pursuant to

an Order of Reference entered on June 4, 2018.  [Dkt. 11.]   For the reasons set forth below, I

respectfully recommend that Your Honor **DENY** the Petition.

                        **II.  BACKGROUND**

---

        [1] Petitioner was incarcerated at Great Meadow Correctional Facility in Comstock, New
York, at the time he filed the instant Petition.  However, according to DOCCS inmate locator
(nysdoccslookup.doccs.ny.gov), Petitioner has been moved to the Green Haven Correctional
Facility.  Accordingly, the Superintendent of Green Haven Correctional Facility, is substituted as
Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The Clerk of the
Court shall amend the caption to reflect the substitution.

A.      **Factual History**[2]

1.      **The Crimes**

In 2011 Petitioner was released on parole for another matter.  To his parole officer, he reported that he lived with his mother at 11 Highview Court, Nyack, New York.  However, when Petitioner applied for Medicaid in November 2011, he listed his address as 608 Hudson Avenue, Nyack, New York.  He also stated that he did not have any income or personal expenses and that he had been continuously unemployed for the past two years.  When Petitioner applied for food stamps in February 2012, he again reported that his address was 608 Hudson Avenue, Nyack, New York and claimed that he paid $400 in rent.  Petitioner's applications were approved and he ultimately received $1,400 in food stamps and $4,615.59 in Medicaid assistance.

On June 12, 2012, Detective Brendan Donohue interviewed Mr. Noel Veras, a maintenance mechanic for Nyack Housing Authority.  Detective Donohue questioned Mr. Veras regarding whether he saw Petitioner at 11 Highview Court.  Mr. Veras said that he had seen Petitioner in and around 11 Highview Court for approximately six months.  Detective Donohue then showed Mr. Veras a photograph of Petitioner and Mr. Veras confirmed that the photograph was indeed of Petitioner.  Mr. Veras also observed that the background of the photograph was the bathroom of Petitioner's residence at 11 Highview Court.

Police obtained and executed a search warrant of 11 Highview Court on June 27, 2012.  They found Petitioner at the address, as well as mail addressed to the Petitioner and Petitioner's New York State benefit card.  Petitioner was arrested and, after a *Miranda* warning, questioned

_____

[2] The information in this section is taken from the Petition [Dkt. 1] and Respondent's Answer with attached exhibits [Dkt. 10].

2

by Detective Robert Shine.  Upon questioning, Petitioner stated that he had been living at 11 Highview Court for the past six months.  Petitioner was ultimately charged with one count of misusing food stamps and one count of grand larceny in the fourth degree.

Prior to his arrest, on June 9, 2012, Petitioner met a 16-year-old girl in the parking lot of the housing complex for 11 Highview Court.  Petitioner offered the girl oxycodone in exchange for nude photographs of herself.  When the girl provided the photographs, Petitioner demanded oral sex as well in exchange for the drugs. The girl complied and performed oral sex on Petitioner.  Petitioner was also arrested in connection with this offense and charged with one count of criminal sexual act in the third degree and one count of endangering the welfare of a child.

Finally, on July 26, 2012, Petitioner sold oxycodone to another individual for $ 80.00. He was arrested and charged with one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree.

### 2.    The Suppression Hearing

On February 28, 2013, Petitioner moved to suppress testimony related to Mr. Vera's identification of Petitioner. [Dkt. 10-2 at 19.]  At a hearing on March 25, 2013, the trial court held that Petitioner's motion to suppress be denied. [Dkt. 10-3 at 55.]  More specifically, the trial court found that the testimony could have fallen within one of the two types of confirmatory identifications recognized by the Court of Appeals, and thus denied Petitioner's motion to suppress. [*Id.* at 55-56.]

### 3.    The Plea Hearing

Petitioner's criminal activity was covered by three different indictments and on April 29,

2013, Petitioner entered into a plea agreement with the prosecution for two of those indictments.

At the plea hearing, Petitioner was represented by his counsel, Mr. Schonbrun, and the

prosecution was represented by Ms. Conklin. The hearing began with the prosecution informing

the trial judge of the most recent indictment against Petitioner for selling oxycodone and how the

prosecution offered to include that indictment in its recent offer to Petitioner, but would only do

so for that day:

THE COURT:    I informed you with Mr. Schonbrun present that the People have there
              are two felony complaints pending on an unrelated matter that he was
              rearrested on and also that they've indicted him on a sale of drugs case.
              So I asked the People what their offer was because I said I'm not
              inclined to go along with the three to six, which is what their offer
              was, in view of the new cases, one of which is a B felony, I'm told,
              which has a range of up to twelve years on. So unless you conclude
              something, Mr. Schonbrun, I'm assuming they will probably move the
              B felony to trial first because that's the higher case in terms of penalties
              that he's facing. So I don't know. Have you discussed anything with
              Ms. Conklin today?

MR. SCHONBRUN:  Judge, I've had some of discussions with Ms. Conklin. That was prior
                to the People having advised the Court that there are new sealed
                indictments on drug sales.

THE COURT:    One of which they said was handed up today, this morning.

MS. CONKLIN:   Yes.

MR. SCHONBRUN:  Today, yes. That was new. But prior to that I had discussed with Ms.
                Conklin the offer, and as recently as Friday, I spoke with Mr. Gulifield
                and that answer was -- he rejected the offer. Subsequently, now,
                coming into court, hearing the new indictments and the unrelated
                felony complaints, I advised Mr. Gulifield of the same and that your
                Honor would not -- might possibly not go along with the three- to
                six-year offer --

THE COURT:    I wouldn't be inclined to do that if there's a B felony on top of the two
              that's here. It's a new case with a much higher exposure.

4

MR. SCHONBRUN:   Right. So I advised Mr. Gulifield that the offer was open today and that you had advised me that after today that you would be inclined not to go along --

THE COURT:   Yes, because she told me that she told you that they would include the others up till today but not after today? That's what you said?

MS. CONKLIN:   That's correct, Judge.

MR. SCHONBRUN:   Right. So I advised Mr. Gulifield of that and he's going to tell me what he wants to do, Judge.

THE COURT:   All right.

[Dkt. 10-3 at 57-59.] After discussing the deal offered by the prosecution with his attorney,

Petitioner agreed to change his plea to guilty to certain charges on the three indictments :

MR. SCHONBRUN:   Yes, Judge, based on discussions had at the bar and with the People, my client wishes to withdraw his previously-entered plea of not guilty and enter a plea of guilty to Indictments 394 of 2012 and 22 of 2013.

THE COURT:   What count is he going to plea to on the 394 ---

MS. CONKLIN:   Count 1.

THE COURT:   Count 1, that's welfare fraud in the third degree, right?

MS. CONKLIN:   Yes, Judge.

THE COURT:   That's a felony, 158.15, right.  And then under Indictment Number 22 of '13?

MR. SCHONBRUN:   Yes, Judge. It's also the top count?

MS. CONKLIN:   Yes.

THE COURT:   That's also Count 1?

MS. CONKLIN:   Yes, Judge.

THE COURT:   That's criminal sexual act in the third degree, right?

| | |
|---|---|
| MS. CONKLIN: | Yes, Judge. |

. . .

| | |
|---|---|
| MR. SCHONBRUN: | Yes, Judge. I don't know. There's another indictment, a sealed indictment, which has been voted but not handed up yet for action, to the Court, for arraignment. So in our discussions we had agreed that Mr. Gulifield will plead guilty to that top -- to those two counts -- The top count? |
| MS. CONKLIN: | It will be a reduced count. It was handed up as a B, reduced to a D. |
| THE COURT: | They're going to reduce it from a B to a D felony for dispositional purposes. |
| MR. SCHONBRUN: | Right. A B to a C felony. Correct? With time to run concurrent on the other two indictments. |
| THE COURT: | Yes. That's what they said. |
| MS. CONKLIN: | Yes, Judge. |

[*Id.* at 67-71.] When Petitioner's counsel was arguing that Petitioner should be credited for the time he was out on bail, the trial court stated: "You know, if you don't have this worked out, then forget the three to six today. I'm not doing it after today. That's their decision to make the recommendation for today. That wasn't mine. So I said, since they said they'd do it today, I'd [sic] would finish it." [*Id.* at 75.] Petitioner then plead guilty to the charges of welfare fraud in the third degree and criminal sexual act in the third degree, with the plea for the sale of oxycodone to come later.

When he was pleading guilty, Petitioner admitted that he was a predicate felon. [*Id.* at 80-82.] During the plea allocution for the welfare charges, Petitioner had difficulty understanding how the prosecution obtained the amount of money he received from Medicaid assistance:

6

THE DEFENDANT:   $4,000, you said it came from Medicaid assistance?

MS. CONKLIN:   Yes. The total amount of benefits you received based on your fraudulent applications was $6,015.59, and that's broken up into $1,400 in food stamps and then $4,615.59 in Medicaid assistance, understanding that the Medicaid assistance could come in the form of premiums paid on your behalf, not money directly received.

THE DEFENDANT:   I'm just not understanding why it's -- did -- why it's $4,000. Where does that come from?

MS. CONKLIN:   Do you understand that Medicaid --

THE COURT:   The only requirement that is that it be above $3,000.

MS. CONKLIN:   Correct.

THE COURT:   That's the legal requirement. Do you concede that there was more than $3,000 taken by that fraudulent welfare act?

MS. CONKLIN:   Total.

THE COURT:   Total. It doesn't have to be 6,000. As long as it exceeds 3,000.

THE DEFENDANT:   No. I understand that, your Honor. I'm just trying to figure out for me copping out to a welfare fraud in the third degree for going over $3,000 and one being 1,400 and 4,000 coming from Medicare, I don't know what Medicare would have paid --

THE COURT:   Okay. Then he don't [sic] want to take the plea. It's as simple as that. Mr. Schonbrun, I'm not going to sit here and diddle with him.

[*Id.* at 84-85.] Petitioner's counsel and the prosecution then explained to Petitioner how the prosecution calculated the amount of money for the welfare fraud charge. After which, Petitioner proceeded with the guilty plea. [*Id.* at 86.]

Petitioner next executed waivers to his right to appeal. The trial court took time to explain the waiver to Petitioner:

THE COURT:   Okay. So are there appellate waivers on this?

MS. CONKLIN:      I've provided them, Judge.

THE COURT:      Are they signed, Mr. Schonbrun?

MR. SCHONBRUN:  They are, Judge.

THE COURT:      Mr. Gulifield, you just signed  two waivers of right to appeal, and by signing those waivers, you're acknowledging in writing that you're waiving or giving up the right to appeal that you otherwise would have. Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:      And what that means, those rights, the rights on each of those cases is separate and distinct from the other rights you waived when you entered the plea itself because by signing these waivers, you're giving up the right to appeal. If you didn't do that, the People wouldn't recommend the pleas and they will be looking for a longer sentence. Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:      So by doing that, they're committing to the sentence that they are recommending. Okay? Did you discuss this with Mr. Schonbrun? You can't nod your head. You have to answer.

THE DEFENDANT:  Yes, your Honor. I'm sorry.

THE COURT:      And do you have any questions you want to ask me about it? Or do you understand it?

THE DEFENDANT:  No.

THE COURT:      What it means that you're waiving your right to appeal, bingo, one, two, three, because their position is that you're coming in here under oath in open court with your attorney next to you pleading guilty because they don't want to be bothered two weeks or three weeks from now getting a motion under Section 440, a motion to set it aside on the grounds that you didn't understand what you were doing or your attorney misadvised you. So that's why I'm placing it right on the record that if you don't execute the waiver of right to appeal, their position is that they won't make the reduction to make that sentence. On the B felony, you'd be looking at a four or six and a half up to

8

fifteen years alone. So the quid pro quo they're offering you is that they're lowering the sentencing recommendation in exchange for your waiver. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you don't do it, they're not going to reduce it. That's where it is. It's a plea bargain, so to speak to some extent. So what's your position on that, Mr. Schonbrun, your client's position?

MR. SCHONBRUN: Judge, I've had a discussion with Mr. Gulifield. I believe he understands. Now that you've explained it to him again, I'm going to ask that he advise the Court if he understands --

THE COURT: Do you understand that?

MR. SCHONBRUN: -- that he's waiving his right to appeal.

THE COURT: Do you understand what the waiver involves?

THE DEFENDANT: I understand.

THE COURT: They do it in every single case here. It's not just you. Any time there is a plea, they execute the waiver for the reasons I just told you, just finality. I'm signing the appellate waiver. I find that the defendant has knowingly and voluntarily executed the same after discussing it with counsel.

[*Id.* at 88-91.] After Petitioner confirmed that he understood that he was waiving his right to appeal, he executed the waiver and the trial judge proceeded with Petitioner's plea. The trial judge also informed Petitioner that he would need to register as a sex offender and Petitioner confirmed that he understood. [*Id.* at 93.] Finally, the trial judge confirmed restitution for the cases, and then concluded Petitioner's plea. [*Id.* at 93-95.]

### 4.    Sentencing

On June 26, 2013, Petitioner was presented for sentencing. At the start of the hearing, Petitioner attempted to withdraw his previously-entered plea of guilty. [Dkt. 10-3 at 99.] His

attorney represented that Petitioner "was confused at the time of the sentencing with regard to the new charges and how they would dovetail with the present charges," and he requested "time to contemplate how those three indictments would dovetail with regard to his sentencing and any new evidence that he believes that he is able to develop[.]" [*Id.*] The trial court denied Petitioner's withdrawal, because "[t]here has been no written motion before me," and Petitioner had plead guilty months ago but failed to withdraw his plea within that time. [*Id.* at 101.]

The trial court then gave Petitioner an opportunity to address the court. Petitioner stated that he received ineffective assistance of counsel because his attorney did not enter a motion for ineffective assistance of counsel, he had only seen his attorney two to three times, the meetings with his attorney were short, and he had trouble contacting his attorney. [*Id.* 110-11.] The trial court stated that Petitioner was getting into the law of the case, but noted that the purpose of the hearing that day was the plea, and thus continued with the plea. [*Id.*]

The trial court sentenced Petitioner to three to six years on the charge of welfare fraud in the third degree and three years determinate and five years post-release supervision for the charge of criminal sexual act in the third degree. [*Id.* at 123-24.] These sentences were set to run concurrently. [*Id.* at 127.] Petitioner was also found to owe $6,136.37 in restitution and was further advised of the order of protection issued against him in connection with the criminal sexual act charge. [*Id.* at 124.]

A couple of days later, on June 28, 2013, Petitioner plead guilty to the charge of criminal possession of a controlled substance in the fifth degree and the trial court sentenced Petitioner to three years determinate sentence with two years post-release supervision. [*Id.* at 140, 157.] This sentence was set to run concurrently with Petitioner's other sentences. [*Id.* at 157.] The trial

10

court also imposed a mandatory penalty of $325 on Petitioner, as well as $80 in restitution. [*Id.*]

**B.      Procedural History**

      **1.      The Direct Appeal**

Petitioner, through counsel appealed his conviction to the New York Appellate Division, Second Department, on April 30, 2014. [Dkt. 10-2 at 32.] Petitioner's brief argued that the trial court erred in accepting Mr. Veras's photo identification of Petitioner. [*Id.* at 43-46.] The state submitted its brief in opposition on June 11, 2014. [*Id.* at 65.] Petitioner later moved for leave to file a *pro se* supplemental brief in support of his appeal, and on July 17, 2014, the Appellate Division granted Petitioner's motion. [*Id.* at 68.] Petitioner had until December 29, 2014 to submit his supplemental brief. Petitioner then moved for additional time to file his *pro se* supplemental brief and on May 19, 2015 the Appellate Division again granted Petitioner's motion. [*Id.* at 69.] The Appellate Division granted Petitioner an extension until July 20, 2015 to file his *pro se* supplemental brief. However, Petitioner never submitted his *pro se* supplemental brief and on September 14, 2015, the Appellate Division deemed the matter to be fully briefed. [*Id.* at 70.]

The Appellate Division affirmed the judgment against Petitioner by decision dated April 27, 2016. *People v. Gulifield*, 28 N.Y.S.3d 898 (App. Div. 2016). The Appellate Division found that Petitioner had waived his right to appeal, and as a result, it was precluded from reviewing his appeal. *Id.* At some point after the Appellate Division's decision, Petitioner's appellate counsel submitted a letter to the Court of Appeals, but Petitioner believes that such letter did not raise any grounds for appeal. [Dkt. 1 at 2.] After Petitioner received the Appellate Division's denial, he requested additional time to file his appeal to the New York Court of Appeals on October 19,

2016 . [Dkt. 10-2 at 73-75.] It is unclear if this motion was granted, but nonetheless, on

February 23, 2018, the Court of Appeals summarily denied Petitioner's leave to appeal the

Appellate Division's April 27, 2016 decision affirming the trial court's judgments. *People v.*

*Gulifield*, 101 N.E.3d 981 (Table) (N.Y. 2018).

### 2.     The Instant Petition

Petitioner executed the instant Petition and delivered it to prison officials for mailing on

March 7, 2018. [Dkt. 1 at 7.] The Petition was received by the Clerk's Office and filed on

March 16, 2018. The Respondent filed a response in opposition to the Petition on June 4, 2018.

[Dkt. 10.] On June 17, 2019, this Court informed Petitioner that Respondent had answered his

Petition on June 4, 2018 and allowed Petitioner until August 15, 2019 to submit a reply. [Dkt.

27.] The Court noted that if no reply was received that date, then the Court would treat the

matter as fully submitted. [*Id.*] Given that no reply has been received, this Court will treat the

matter as fully submitted.

### III.   APPLICABLE LAW

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S.

614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). Before a federal district court

may  review the merits of a state criminal judgment in a habeas corpus action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254 (d). The procedural and substantive standards applicable to habeas

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

12

Act of 1996 ("AEDPA"), are summarized below.

## A.      Exhaustion Requirement

A federal court may not grant habeas relief unless the petitioner has first exhausted his

claims in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); *id.* § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims. *Rose v. Lundy*, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*

*v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-

constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition

must put state courts on notice that they are to decide federal constitutional claims." *Petrucelli v.*

*Coombe*, 735 F.2d 684, 687 (2d Cir. 1984) (citing *Smith v. Phillips*, 455 U.S. 209, 221 (1982)).

Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. *See, e.g.*, *Reyes*, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," *Harris v. Reed*, 489 U.S. 255, 262 (1989), or "actual innocence," *Schlup v. Delo*, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

14

its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Padilla v. Keane*, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

**B.    Procedural Default**

Even where an exhausted and timely habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Colman*, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

The Supreme Court has held that a federal court may review a claim that is procedurally barred if the petitioner can show a "miscarriage of justice," which occurs where a petitioner is "actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2002); *see Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

**C.    AEDPA Standard of Review**

Before a federal court can determine whether a petitioner is entitled to federal habeas

relief, the court must determine the proper standard of review under AEDPA for each of the
petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal
habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more
exacting standard of review.  *Williams v. Taylor*, 529 U.S. 362, 402 (2000).  For petitions filed
after AEDPA became effective, federal courts must apply the following standard to cases in
which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court
has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.
*Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at
a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]
decides a case differently than [the Supreme Court] on a set of materially indistinguishable
facts."  *Williams*, 529 U.S. at 413.  A decision involves an "unreasonable application" of
Supreme Court precedent if the state court "identifies the correct governing legal rule from the
Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's
case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a

16

new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

## IV.  ANALYSIS

Petitioner raises five arguments in his timely filed Petition: (1) Petitioner was unlawfully arrested in a third party's home under a search warrant that did not include his name or give the arresting officer authorization to arrest Petitioner; (2) Petitioner was unlawfully arrested another time in his hotel room by the same officers that had previously arrested him and brought forth before the court for arraignment; (3) Petitioner's defense counsel failed to file a motion contesting the grand jury because the prosecution failed to provide Petitioner with a notice about the grand jury proceedings; (4) Petitioner's defense counsel failed to challenge Mr. Veras's photo identification of Petitioner; and (5) Petitioner was coerced to take a guilty plea by the judge's participation in the plea process. [Dkt. 1.]

### A.  Grounds 1 & 2 Are Fourth Amendment Claims That Are Not Cognizable in Habeas

Where the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," federal courts may not review habeas petitions based on those claims. *Stone v. Powell*, 428 U.S. 465, 494 (19760). The Second Circuit has held:

> [F]ourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."). The Second Circuit has also held that New York's procedure for litigating Fourth Amendment claims is "facially adequate." *Capellan*, 975 F.2d at 70 n.1.

Here, Petitioner's first argument for habeas relief is that he was unlawfully arrested when the police were executing the search warrant of his mother's house. He further argues that his attorney failed to raise this argument in a suppression hearing. Petitioner's second argument is that he was unlawfully arrested in his hotel room and that the officers also executed a search warrant. Petitioner further contends that his attorney failed to move to suppress the drugs discovered in his hotel room.[3] Because both of these claims are Fourth Amendment claims, neither of them are cognizable on habeas review. *See Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986) (finding that petitioner's claim that his post-arrest questioning yielded "fruits of the illegal arrest" that should have been suppressed was barred because New York "clearly provided" petitioner with "an opportunity fully and fairly to litigate" his Fourth Amendment claim).

This Court could still review Petitioner's claims if he demonstrates that there was an "unconscionable breakdown" in these corrective mechanisms. *Capellan*, 975 F.2d at 70. In the instant case, however, Petitioner does not contend, and the record fails to reveal, that there was

---

[3] To the extent that Petitioner's arguments in Grounds 1 and 2 can be construed as arguments for ineffective assistance of trial counsel, for the reasons discussed in Part IV.B, these arguments are not cognizable in habeas.

an unconscionable breakdown in the corrective process necessitating habeas review.  Petitioner

argues that he attempted to have his counsel raise these arguments in a suppression hearing, but

that his counsel "failed to provide effective assistance of counsel." [Dkt. 1 at 4.]  This argument,

however, "is insufficient to establish the sort of unconscionable breakdown necessary for the

Court to address petitioner's Fourth Amendment claims." *Parker v. Ercole*, 582 F.Supp.2d 273,

288 (N.D.N.Y.2008); *see Shaw v. Scully*, 654 F.Supp. 859, 865 (S.D.N.Y. 1987) ("Where

petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or

deliberately bypassed the procedure . . . courts within this circuit have refused to equate

ineffective assistance of counsel with unconscionable breakdown."); *Allah v. Le Fevre*, 623

F.Supp. 987, 992-92 (S.D.N.Y. 1985) ("[T]he Court of Appeals had something other than

ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown

in state process might permit federal habeas review.").  Accordingly, I recommend Your Honor

find that these claims are not cognizable in habeas.[4]

**B.      Grounds 3 & 4 Relate to Petitioner's Actions Prior to His Guilty Plea And Are Not Cognizable in Habeas**

Similar to Petitioner's arguments in Grounds 1 and 2, Petitioner's arguments in Grounds

3 and 4 must similarly be denied because they are not cognizable on habeas review.

**1.      Petitioner Entered Into His Plea Intelligently and Voluntarily**

It is well-settled that "[a] defendant who pleads guilty unconditionally while represented

by counsel may not assert independent claims relating to events occurring prior to the entry of the

guilty plea." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir.2008) (internal quotation

---

[4] Even if Petitioner's arguments in Grounds 1 and 2 were not barred as Fourth Amendment claims, they would still not be cognizable in habeas for the same reasons that Grounds 3 and 4 are not cognizable in habeas (discussed further in Part IV.B).

omitted).  As the Supreme Court has explained, this is because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). "[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]" *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir.2006) (per curiam). As the Supreme Court has explained:

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975) (per curiam).  As a result, the defendant "may only attack the voluntary and intelligent character of the guilty plea." *Tollett*, 411 U.S. at 267. Thus, "the issue [is] not the merits of these [pre-plea] constitutional claims as such, but rather whether the guilty plea had been made intelligently and voluntarily." *Id.* at 265.

Here, the record demonstrates that Petitioner's plea was both intelligently and voluntarily entered into. "A plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way . . . ." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir.1988).  During his plea allocution, Petitioner stated he: understood the charges alleged in the indictment [Dkt. 10-3 at 83-88]; understood the terms of

20

the plea bargain [*id.* at 76-77]; discussed the proposed plea bargain with his attorney [*id.* at 78];

was satisfied with the services of his attorney [*id.*]; and understood the constitutional rights he

would be waiving by pleading guilty, including the right to have the prosecution prove their case

beyond a reasonable doubt, the right to a jury trial, the right to confront and cross-examine

witnesses, the right to present a defense, the right to remain silent, and the right to appeal his

conviction [*id.* at 82-83, 89-91]. Petitioner's "statements at [his] plea allocution carry a strong

presumption of veracity." *United States v. Torres*, 120 F.3d 710, 715 (2d Cir.1997).  As a result,

Petitioner's statements establish that he was satisfied with his attorney's performance and advice,

and that he understood the consequences of his guilty plea.  The plea was therefore entered into

intelligently.

A plea "is deemed 'voluntary' if it is not the product of actual or threatened physical

harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to

weigh his options rationally." *Miller*, 848 F.2d at 1320.  Here, Petitioner's allocution included no

threats, no physical harm, and no mental coercion.  In his fifth ground, discussed in more detail

below, Petitioner argues that he was pressured by the trial judge to accept the terms of the plea.

This, however is insufficient to establish that Petitioner's plea was not entered into voluntarily.

*See United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir.1992) ("Courts have long recognized

that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads

guilty a lesser sentence than would have been imposed had the defendant stood trial."); *see also*

*McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004) ("Although federal judges are

prohibited from participating in plea bargaining, *see* Fed. R. Crim. P. 11, this blanket prohibition

does not apply to state judges."); *Izaguierre v. Lee*, 856 F. Supp. 2d 551, 568-70 (E.D.N.Y.

2012). Accordingly, the record establishes that Petitioner entered his guilty plea voluntarily.

Given that Petitioner's plea was intelligent and voluntary, Petitioner's claims concerning matters that preceded this plea, or which Petitioner knew or should have known the factual bases of prior to entering this plea, must be denied.

### 2. Grounds 3 and 4 Are Claims based on Actions Prior to the Plea and thus Not Cognizable in Habeas

In Grounds 3 and 4 of his Petition, Petitioner argues that he received ineffective assistance of trial counsel. Specifically, for his third ground, Petitioner argues that he received ineffective assistance of counsel because his counsel failed to file a motion contesting the finding of the grand jury because Petitioner did not receive notice of the grand jury. [Dkt. 1 at 5.] For his fourth ground, Petitioner argues that he received ineffective assistance of counsel because his counsel failed to challenge Mr. Veras's photo identification of Petitioner. [*Id.* at 5-6.]

As discussed above, Petitioner entered into a constitutionally valid guilty plea that waived claims arising from events that occurred prior to the entry of Petitioner's guilty plea. "This waiver includes ineffective assistance of counsel claims concerning events that Petitioner knew or should have known about, or that occurred prior to. the entry of his guilty plea that did not affect the voluntariness of the plea." *Hayes v. Lee*, 2015 WL 5943677, at *31 (S.D.N.Y. Oct. 13, 2015) (collecting cases).[5] Because Petitioner's ineffective assistance of counsel claims relate to events that occurred, or that Petitioner knew or should have know about, prior to the entry of his guilty plea, these claims are not cognizable on *habeas* review. Accordingly, I recommend Your

---

[5] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Honor deny these claims.[6]

## C.   Petitioner Failed to Properly Exhaust Ground 5

In his final ground for appeal, Petitioner argues that he was coerced into taking a guilty

plea by the trial judge's participation in the plea process. [Dkt. 1 at 6-7.] Petitioner specifically

argues that the trial court pressured Petitioner by "mentioning long [exposure] times" if

Petitioner did not accept the plea agreement that day and mentioning how the plea agreement

would be "off the table" after that day. [*Id.* at 6.] Petitioner also argues that the trial judge cut

him off when he was trying to understand the calculation of the benefits he obtained illegally and

hinted to the prosecution that they should try the new drug charges before Petitioner's other

charges. [*Id.* at 6-7.]

"In New York, claims about the voluntariness of a guilty plea must be presented to the

state court in one of three ways: a motion to withdraw the plea before sentencing," "on direct

appeal if the record permits" or "a post-judgment CPL § 440.10 motion in the trial court[.]"

*Foreman v. Garvin*, 2000 WL 631397, at *8 (S.D.N.Y. May 16, 2000) (collecting cases).

---

[6] To the extent that Petitioner argues that he did not exhaust the arguments raised in Grounds 1 through 4 due to ineffective assistance of appellate counsel, that claim is also unexhausted because Petitioner has not raised it in a subsequent *coram nobis* petition. Nonetheless, if Petitioner were to raise that argument in a *coram nobis* petition, it is apparent that such claim is without merit. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, Petitioner's arguments are apparently without merit because Petitioner's appeal waiver would have precluded the Appellate Division from considering any additional arguments Petitioner would have raised on appeal. *See People v. Terry*, 98 N.Y.S.3d 456 (App. Div. 2019); *People v. Burvick*, 874 N.Y.S.2d 808 (App. Div. 2009).

Even if there was merit to Petitioner's ineffective assistance of appellate counsel claim, it would be of no moment because the grounds for which Petitioner raises that claim are not cognizable in habeas. *See* Part IV.A-.B. Thus, even if Petitioner's appellate counsel had properly exhausted them, Petitioner would still not be able to seek relief from this Court.

Here, Petitioner did not file a motion to withdraw his plea before sentencing. Indeed, on the day of his sentencing, Petitioner orally attempted to withdraw his guilty plea, but failed to actually make the motion in the two months leading up to his sentencing. [Dkt. 10-3 at 99-101.] Thus, Petitioner did not engage in the first method to challenge the voluntariness of his plea. On direct appeal, Petitioner's counsel did not raise an argument concerning the voluntariness of his plea. Indeed, the Appellate Division even gave Petitioner the opportunity to file his own *pro se* supplemental brief, in which Petitioner could have raised this argument. However, Petitioner failed to file a brief, and after over a year of waiting, the Appellate Division deemed the matter fully submitted. Accordingly, Petitioner did not use the second method to challenge the voluntariness of his plea. Finally, Petitioner has not filed a post-judgment § 440.10 motion in the trial court. However, "Section 440.10(2)(c) of New York's Criminal Procedure Law mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record." *Foreman*, 2000 WL 631397, at *9. As a result, because Petitioner did not raise his claim in his direct appeal, he could not now raise it in a § 440.10 motion.

Accordingly, because Petitioner failed to raise this claim in his direct appeal, it is unexhausted.[7]  Given that Petitioner also no longer has "remedies available" in state court, his unexhausted claim is deemed exhausted but procedurally barred. *See Grey*, 933 F.2d at 120-21.

---

[7] In his Petition, Petitioner states that for his leave application, "[m]y Appellate Attorney submitted said letter to court without raising any grounds." [Dkt. 1 at 2.] However, in his motion for an extension of time to file his leave application, Petitioner indicates that his appellate counsel did not file a notice of appeal. [Dkt. 10-2 at 73-74.] Thus, it is unclear what arguments were presented to the Court of Appeals before it denied Petitioner's leave application. *See People v. Gulifield*, 101 N.E.3d 981 (Table) (N.Y. 2018). Nonetheless, because this is not germane to the exhaustion analysis, or any other analysis within this Report and Recommendation, it is ultimately of no consequence.

Petitioner could overcome this procedural bar if he shows cause and prejudice or actual innocence. Petitioner, however, has made no such showing here, and as a result, this Court cannot review this claim. I therefore conclude, and I respectfully recommend Your Honor conclude, that this Court cannot review this claim.

## VI. CONCLUSION

For the reasons set forth above, I respectfully recommend that Your Honor **DENY** the Petition for a Writ of Habeas Corpus. I recommend that no certificate of appealability be issued because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. 2253 (c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Dated: April 15, 2022
     White Plains, New York

Respectfully Submitted,

Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from service of this Report and Recommendation to

serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. *See also* Fed. R. Civ. P. 6 (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the Honorable Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Seibel.  A copy of this Report and Recommendation has been mailed to::

Jashaad Gulifield
DIN#13A2981
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582